C. M. Peterson, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 70223. Promulgated September 14, 1934.

*Maxwell M. Mahaney, Esq.*, and *George H. Abbott, C.P.A.*, for the petitioner.

*W. R. Lansford, Esq.*, for the respondent.

OPINION.

Trammell: This proceeding is for the redetermination of a deficiency in income tax of $8,851.14 for 1931. The only matter in controversy is the correctness of the respondent's action in refusing to

allow as a credit against the petitioner's tax liability an amount of $11,801.52 which it is alleged represents income tax of the petitioner paid to the Government of Newfoundland. The proceeding was submitted upon a stipulation of facts and certain documentary evidence. Pertinent portions of the stipulation are as follows:

The petitioner is a citizen of the United States who at all times during the period from January 1, 1931 up to and including the present date, has maintained his domicile and residence in the City of Tulsa, County of Tulsa, State of Oklahoma, United States of America.

During the year 1931 and prior to May 12, 1931, the petitioner became a subscriber to the Charity Subscription Fund of the Army and Navy Veterans in Canada, Quebec Unit No. 33, by the purchase of Ticket No. TV 10136.

This ticket carried the right of participation in the drawings in the Derby Charity Sweeps conducted under the auspices of the Great War Veterans of Newfoundland.

As a result of the Derby Charity Sweeps held at Epsom, England, the petitioner during the year 1931 became entitled to one-half of the winnings of a horse known as Cameronian entered in said race.

The petitioner's prize money amounted to $147,519.02 (in Newfoundland money $148,260.32.) and out of the foregoing sum there was paid to the petitioner by the Army and Navy Veterans in. Canada, Quebec Unit No. 33, on or about June 8, 1931 the sum of $135,717.50 (in Newfoundland money $136,399.49). * * *

The difference between the foregoing sums, namely $11,801.52 (in Newfoundland money $11,860.83) was deducted by the Army and Navy Veterans in Canada from the prize money and the net sum of $135,717.50 (in Newfoundland money $136,399.49) only was paid to and received by the petitioner.

*    *    *    *    *    *    *

The petitioner, when filing his Federal Income Tax Return for the year 1931 reported as income the sum of $147,519.02 and took as a credit the sum of $11,801.52. The respondent Commissioner, in arriving at the deficiency involved in this appeal, reduced the $147,519.02 by $11,801.52, and included as gross income the difference of $135,717.50, the " net amount received ", but eliminated entirely As a Credit the sum of $11,801.52. That is, the respondent has in substance allowed as a Deduction and Not As a Credit the sum of $11,801.52.

The petitioner contends that the sum of $11,801.52 is properly allowable as a Credit under the applicable provisions of the 1928 Revenue Act, and that this sum represents Income taxes paid by or on behalf of the petitioner to the taxing authorities of Newfoundland.

Newfoundland is a self-governing member of the British Commonwealth of Nations, and, as such, had the power to and did assess and collect income taxes during the year 1931. Newfoundland was during the year 1931 a " foreign country " within the purview of Sec. 131 (a) (1) Revenue Act of 1928.

It is agreed that if the Board should find that the sum of $11,801.52 may be taken by the petitioner as a Credit for the year 1931, then there is no deficiency in tax due from the petitioner for that year, and that if the Board should hold with the respondent and decide that such amount is not allowable as a Credit, then the deficiency to be found by the Board shall be the sum of $8,851.14 * * *.

It is agreed that, if the amount of $11,801.52 is otherwise properly allowable as a credit under Section 131 Revenue Act of 1928, then this credit does not exceed the same proportion of the tax for the year 1931 (computed

on the basis of the taxpayer's net income without the deduction of any income, war-profits, or excess-profits tax any part of which may be allowed to him as a credit under said section), against which such credit is taken, which the taxpayer's net income (computed without the deduction of any such income, war-profits, or excess-profits tax) from sources without the United States bears to his entire net income (computed without such deduction) for the year 1931.

The notice of assessment by the Newfoundland assessor of the tax here in controversy reads as follows:

### NEWFOUNDLAND

### INCOME TAX

---

#### Assessment Notice

JUNE 2ND, 1931.

To ARMY & NAVY VETERANS IN CANADA,
  QUEBEC UNIT No. 33,
      ST. JOHN'S NFLD.

Under the provisions of the Income Tax Act, 1929, notice is hereby given that for the 1931 taxation period the amount of tax assessed and levied upon *your income* [italics ours] for that period is as follows:

INCOME

|  |  |
|---|---|
| Gross | $1,140,464.00 |
| Deductions | $433,376.30 |
| Net | $707,087.70 |

LESS CREDIT—

|  |  |
|---|---|
| Statutory Exemption | ~~$5,000.00~~ |
| TAXABLE INCOME | $707,087.70 |
| TAX AT 8% PAYABLE | $56,567.01 |
| Penalties under Section 11, (4) (6) (7) | $ |
| Interest | $ |
| AMOUNT OF TAX | $56,567.01 |

Checques must be made payable to the Minister of Finance and must have been previously accepted and marked by the Bank on which drawn.

[Signed]  *John J. Sinnott*
                    ASSESSOR
            Pro: MINISTER OF FINANCE

Respecting the failure to allow the statutory credit of $5,000 in making the assessment a statement attached to the notice reads as follows:

Credit:—

|  |  |
|---|---|
| Statutory | $5,000 |

this was allowed in the February 1931 Lottery conducted by the Army & Navy Veterans in Canada—it is allowed once, i.e. from the first lottery in the year of taxation.

A computation of the part of the tax allocable to one half of the first prize made in a letter written by the assessor in April 1934 to certain accountants is as follows:

ARMY AND NAVY VETERANS

*Derby Charity Sweepstakes, June 3rd, 1931.*

| | | |
|---|---|---|
| (1) Collections or Subscriptions from Subscribers | | $1,140,464.00 |
| (2) Expenses including Veteran charity | | 433,376.30 |
| (3) Amount Taxed | | $707,087.70 |
| (4) Income Tax at 8%, paid | | 56,567.01 |
| (5) | | $650,520.69 |

(4) is the Income tax on (3) and (5) is the remainder:

$$\frac{\$136.399.49}{650,520.69} \times \$56,567.01 = \frac{\text{Equals tax apportioned to } \frac{1}{2} \text{ first prize}}{\$11,860.83}$$

The petitioner contends that the amount deducted by the Army and Navy Veterans in Canada from his prize money represented an income tax imposed upon him under the laws of Newfoundland and, having been paid in the year of its imposition, 1931, it constitutes an allowable credit against his tax liability to the United States for that year. The respondent contends that the tax in controversy was not imposed upon and paid by the petitioner but was imposed upon and paid by the Army and Navy Veterans in Canada, and the petitioner therefore is not entitled to the credit sought.

A copy of the Income Tax Act of 1929 of Newfoundland as annotated, apparently by the assessor, and a copy of the Income Tax Act of 1932 were put in evidence by the parties.

Section 2 (j) of the Act of 1929, after making provision for a deduction on account of dependents in determining net income, contains the following:

Provided that where any person liable to taxation under this Act is not resident in Newfoundland and not a British subject he shall not be entitled to the exemption * * * and * * * he shall pay a Normal tax of eight [changed to twelve by the Act of 1932 which was retroactive to January 1, 1931] per centum upon all income in excess of one thousand dollars.

Section 2 (k) provides:

Dividends received by or credited to shareholders whether resident or non-resident of a Corporation or Joint Stock Company which dividends are liable to taxation under the provisions of this Act shall not be liable to the Normal Tax in the hands of the shareholders, but shall be liable to the Supertax provisions of this Act.

Section 4 (2) provides:

Corporations and Joint Stock Companies, no matter how created or organized, liable to be taxed, under this Act, shall pay eight [changed to twelve by Act of 1932 which was retroactive to January 1, 1931] per centum on income exceeding $5,000 [this exemption eliminated after January 1, 1931 by the Act of 1932] but shall not be liable to any Supertax * * *.

Section 7 provides:

The following incomes shall not be liable to taxation hereunder:

*     *     *     *     *     *     *

(f) The income of Clubs, Societies, and Associations organized and operated solely for social welfare, civic improvement, pleasure, recreation or other non-profitable purposes, no part of the income of which enures to the profit of any stockholder or member.

An annotation to the foregoing provision of section 7 states that incorporated bodies or associations conducting lotteries are taxed under section 4 (2), a quotation from which is set forth above. It is stated that lotteries are taxed at the date of drawing. It is further stated that the portion of lotteries which is devoted to charity is not taxed, but that prizes are taxed.

In this connection it might be stated that section 4 of the Act of 1929 was amended by the Act of 1932 by adding a new subsection (8), to be effective from March 2, 1932, which reads as follows:

Where permission has been granted to persons conducting or operating Lotteries, such persons shall pay to the Assessor 12 per centum on the amount declared to be prizes or such like distributions, and such tax shall be due and payable by such persons immediately at the time when drawing takes place and before any prizes are paid.

The record furnishes no explanation as to why the amendment was made. It may well be that the amendment was for clarifying purposes, as against whom the tax should be levied. At any rate it does not appear to change the 1929 Act as construed by the taxing authorities with respect to who was liable for the tax.

Section 12 (3) of the Act of 1929 provides as follows:

Every agent, trustee or person who collects or receives, or is in any way in possession or control of, income for or on behalf of a person who is resident outside of Newfoundland, shall make a return of such income, and in case of default by such non-resident of the payment of any tax payable shall, on being so notified by the Minister, deduct the amount of such tax from either the income or other assets of such non-resident in his hands and pay the same to the Minister.

The notice of the assessment of the tax, a portion of which the petitioner is here claiming as a credit, shows that it was directed to the Army and Navy Veterans in Canada, Quebec Unit No. 33. It contains the statement that the tax shown therein was assessed and levied upon the income of that organization. While section 4 (2)

of the 1929 Act provided for an exemption or credit of $5,000 in determining taxable income, a statement attached to the notice explained that such credit was not being allowed because it had been allowed with respect to a lottery conducted earlier in that taxable year. From the foregoing it appears that the assessor, acting on the behalf of the Minister of Finance, who was charged with the enforcement of the law, determined that under the law the income from the lottery, a portion of which was received by the petitioner, was income of the Army and Navy Veterans in Canada, Quebec Unit No. 33, and was taxable to it. The computation set out in a letter written by the assessor in April 1934 of the portion of the tax assessed against the organization allocable to one half of the first prize in no wise indicates that such portion was tax due from or payable by the petitioner. The computation having been made in a letter written almost three years after the lottery was held and the tax assessed, we fail to see that it has any special significance.

Under section 2 (j), *supra*, if the tax here in controversy was a tax against the petitioner he was entitled to a credit, exemption, or deduction of $1,000 in computing the amount of his income subject to the normal tax at 8 percent. No such credit or any part thereof was allowed in computing the tax shown in the assessment notice, nor is there anything in the record to indicate that the assessor acted under this section or that the petitioner ever sought to have him do so. Furthermore, the petitioner does not contend here that the assessor should have done so. If the amount had been dividends it would not have been subject to normal tax, but to the supertax at graduated rates, resulting in a much greater tax than that assessed. There is nothing to indicate that the assessor acted under this section and there is no contention that he should have. Section 12 (3) provides for the making of a return by a person who is in possession or control of income of a person residing outside of Newfoundland, and where such nonresident defaults in the payment of the tax the person in possession or control of such income is, upon notification by the Minister of Finance, to deduct the amount of such tax from either the income or the assets of the nonresident in his hands and make payment to the Minister. The facts fail to show any such procedure to have been involved or followed in this case. So far as we can determine, no tax was ever levied or assessed by the Newfoundland authorities against the petitioner or against anyone else on his behalf with respect to income belonging to him. The tax, a portion of which the petitioner seeks as a credit, was levied and assessed by the Newfoundland authorities upon what they determined to be income of the organization conducting the lottery. The tax was collected by them from that organization as tax of that organization.

In thus assessing and collecting the tax they presumably acted in accordance with the income tax act as it was interpreted and understood in that jurisdiction. If the organization had considered such determination erroneous it had, under the provisions of that act, the privilege of appealing the matter directly to the Supreme Court of Newfoundland. The record does not show that any appeal was ever taken. From an examination of the evidence before us we are not able to find that the tax, a portion of which is here sought as a credit, was a tax against the petitioner.

The imposition upon and the payment of the tax by the organization conducting the lottery would necessarily reduce the proceeds from the lottery out of which prizes could be paid. This in turn would reduce the amount that would be received by winning ticket holders. But these facts in and of themselves would not make the tax paid by the organization a tax upon the winning ticket holders. For a foreign tax paid to be allowable as a credit against a taxpayer's Federal income tax liability, such foreign tax must have been a tax against the taxpayer and not a tax imposed upon and paid by another on its own account, as was the situation in the instant case. *Elgin National Watch Co.*, 17 B.T.A. 339; *Basil Robillard, Executor*, 20 B.T.A. 685; *Duckworth Co.*, 24 B.T.A. 304. The contention of the petitioner is therefore denied.

In accordance with the stipulation of the parties,

> *Judgment will be entered determining a deficiency of $8,851.14 for 1931.*